1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| MATTHEW WRIGHT, an individual, | ) | No. |
| | ) | |
| Plaintiff, | ) | COMPLAINT FOR DAMAGES |
| | ) | |
| v. | ) | (Civil Rights, Jury Trial Demanded) |
| | ) | |
| STATE OF WASHINGTON; | ) | |
| WASHINGTON DEPARTMENT OF | ) | |
| CORRECTIONS; DIANE CARMEL; | ) | |
| STEVEN SINCLAIR; ERIC JACKSON; | ) | |
| MICHAEL HATHAWAY; and DOES I-X, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.   INTRODUCTION

1.      Plaintiff Matthew Wright is currently an inmate at Monroe Correctional Complex in Monroe, Washington. Plaintiff, by and through his undersigned counsel, files this Complaint for declaratory and injunctive relief and damages against defendants, in their official and individual capacities, for violations of the Fifth, Eighth, and Fourteenth Amendments. He brings this action as a result of defendants' refusal to allow him to see or visit with his children and because defendants are allowing plaintiff to be threatened and intimidated by other inmates,

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1   staff, and outside personnel. Defendants and each of them have been deliberately indifferent to

2   their serious infringement on parental rights. As a result, defendants have violated plaintiff's

3   Fifth, Eighth, and Fourteenth Amendment rights and have caused plaintiff to suffer deprivation

4   of his civil, statutory, and constitutional rights, and physical injury as well as mental and

5   emotional distress.

## II. JURISDICTION

7     2.   The jurisdiction of this Court over this Complaint is invoked pursuant to the

8   provisions of 28 U.S.C. §§ 1331(a) and 1343 (1), (2), (3), and (4); the provisions of 42 U.S.C. §§

9   1983 and 1988; and, the Constitution of the United States, specifically the Eighth, Fifth, and

10   Fourteenth Amendments thereto.

11     3.   Plaintiff's claims for declaratory and injunctive relief are sought under 28 U.S.C.

12   § 2202, 28 U.S.C. § 1343, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the

13   general, legal, and equitable powers of this Court.

14     4.   Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§

15   1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing

16   parties, pursuant to 42 U.S.C. § 1983.

## III. VENUE

18     5.   Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because at least

19   one defendant resides in the Western District of Washington, and because most of the events and

20   omissions giving rise to plaintiff's claims occurred in the Western District of Washington.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

22     6.   Plaintiff has exhausted all possible grievances and has pursued all administrative

23   remedies available to him.

COMPLAINT FOR DAMAGES - 2

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

## V.   PLAINTIFF

7.      Plaintiff Matthew Wright is an adult male inmate, currently incarcerated at the Monroe Correction Facility in Monroe, Washington. He has two minor children. He has been approved by the Superior Court of Snohomish County to have visitation rights, which includes an overnight once a month in a trailer on the prison grounds.

## VI.   DEFENDANTS SUED IN OFFICIAL CAPACITY ONLY

8.      Defendant Washington Department of Corrections ("DOC") is an agency of the State of Washington. At all times relevant to this action, DOC has maintained custody of plaintiff pursuant to his judgment and sentence.

9.      Defendant Steven Sinclair the Superintendent of Prisons for the Washington State Department of Corrections and, in doing the things complained of herein, was acting under color of law and within the course and scope of his employment by defendant Washington State Department of Corrections.

## VII.   DEFENDANTS SUED IN BOTH OFFICIAL AND INDIVIDUAL CAPACITIES

10.     Eric Jackson is the Superintendent at the Monroe Correctional Complex and, in doing the things complained of herein, was acting under the color of law and within the course and scope of his employment by defendant Washington State Department of Corrections.

11.     Michael Hathaway is the Correctional Program Manager at the Monroe Correctional Complex and, in doing the things complained of herein, was acting under the color of law and within the course and scope of his employment by defendant Washington State Department of Corrections.

COMPLAINT FOR DAMAGES - 3

Civil Rights Justice Center PLLC
2150 N 107ᵗʰ Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

12.     Defendants Does I through X, in doing the things complained of herein, were acting under color of law and within the course and scope of their employment by defendant Washington State Department of Corrections.

## VIII.     DEFENDANTS SUED IN INDIVIDUAL CAPACITY ONLY

13.     Defendant Diane Carmel ("Carmel") is, and at all times herein mentioned was, a Social Service Specialist II with the Washington State Department of Social and Health Services and, in doing the things complained of herein, was acting in an individual capacity.

## IX.     STATEMENT OF FACTS

14.     On January 14, 2004, plaintiff Matthew Wright was transferred to the Monroe Correction Complex, Twin Rivers Facility, in Monroe, Washington.

15.     Wright has two minor children by his ex-wife Sarah Wright ("Sarah").

16.     From 2012 to May of 2017, Wright had been allowed trailer visits with his two minor children and their escort, his sister Theodora Wright ("Theodora").

17.     In March of 2016, Wright filed for divorce against Sarah in Snohomish County Superior Court.

18.     At that time, Sarah was corresponding with incarcerated felon James Burch in the Oregon prison system; Burch later became her boyfriend.

19.     On March 25, 2016, The Snohomish County Superior Court issued a parenting plan, allowing Wright up to six visits a month with his two minor children, including an average of one overnight visit per month.

20.     Shortly after Wright filed for divorce, Sarah removed herself from his prison visiting list and began allowing her children to visit Burch in the Oregon prison. Sarah began threatening to remove the children from Wright's visiting list, take away trailer visits, and file a

COMPLAINT FOR DAMAGES - 4

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

1  restraining order against him. After Wright received the threats, he informed his counselor,

2  Harold Archibald ("Archibald"), about the harassment.

3      21.    In May of 2016, Sarah filed a restraining order against Wright. Once Wright's

4  attorney requested a court order for the recorded DOC calls, Sarah dropped the restraining order.

5  Wright again informed Archibald of the situation. When counselor Frederick Rogers ("Rogers")

6  became Wright's new counselor, Wright informed Rogers of the incidents.

7      22.    At the time of the filing of the divorce, Sarah was dating Michael Andes, a

8  convicted murderer in Oregon.  She was also corresponding with Burch, at Monroe Correctional

9  Complex, requesting that he put pressure on Wright for his children to see Michael Andes in the

10  Oregon prison. Wright informed counselor Rogers, Custody Unit Supervisor Jeff Flick ("Flick"),

11  and the Investigator Bob Howard ("Howard") of his fears. Sarah also told Wright that she would

12  murder him.

13      23.    Wright then began monitoring the threatening phone calls he was receiving from

14  Sarah, as well as informing Flick, Howard, and Rogers.

15      24.    Wright's parental visits were reduced to four visits a month with additional

16  overnights.

17      25.    In August of 2016, Wright was continually afraid for his children, so he filed a

18  police report with the Monroe Police Department. He reported the recorded threats, harassment,

19  and extortion by Sarah.

20      26.    In that same month, Sarah filed another restraining order against him. The Court

21  ordered Wrights visitation be suspended and gave an Order for the recorded DOC calls.

22      27.    In October of 2016, the Court reviewed the DOC calls, and the restraining order

23  was dismissed after finding Sarah fabricated the complaint.

24

COMPLAINT FOR DAMAGES - 5

28.    Sarah asked the Court to relocate her children to Oregon; however, the Court denied her request and reinstated Wright's visitation.

29.    At that time, after considering whether Wright had any limiting factors and finding none, the Court also issued a Parenting Plan. The Court then issued an Order allowing Wright visitation, including overnight visits, and phone calls with his children.

30.    Wright, over Sarah's objection, paid to have a guardian ad litem appointed to protect his children. Sarah's harassment and threatening behavior toward Wright continued from October of 2016 through February of 2017. Wright continued to report these incidents to Rogers, Howard, and Flick.

31.    In February of 2017, Burch was released and sent Wright a threatening email over the prison-run J-pay email system saying that Wright should die, he was a rat, and he was waiting for him to get out of prison. These threats continued from people in and out of the prison. The threats were also to Wright's sister. Wright gave copies of the email to Flick, Howard and Rogers, who all agreed to investigate. No one conducted an investigation or did anything to help him.

32.    In March of 2017, Sarah contacted the Superintendent of Family Services in Olympia, Belinda Stewart ("Stewart"), to inform her that Theodora was unable to escort the children to the trailer visits. Stewart suspended Wright's visits with his children. However, after a phone call from Rogers and Flick, Stewart reinstated his visitation.

33.    In April of 2017, Burch moved in with Sarah and the children. He was quickly arrested for violating his parole. During this time, Sarah threatened Wright that she would ruin him and tell Monroe he was molesting the children and ask that the visits be halted. Wright notified Rogers and Flick of Sarah's aggressive calls on a daily basis.

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

34.     In May of 2017, Burch was, again, released from prison. He spent time with Sarah and the children. During one of Wright's daily phone calls with his children, Burch took the phone from Wright's daughter and threatened to kill him. Wright then filed a restraining order against Burch to prevent him from seeing his children.

35.     On June 14, 2017, Sarah filed a false report with a Custody Programming Manager, defendant Michael Hathaway ("Hathaway"), stating that Wright was taking naked baths with his children during his overnight trailer visits.

36.     On June 15, 2017, as a result of Sarah's complaint, defendant Hathaway visited Wright and informed him he was suspending Wright's overnights with his children pending a Child Protective Services ("CPS") investigation.

37.     On August 9, 2017, two Monroe police officers interviewed Wright in the presence of his new counselor, Victoria Mattson ("Mattson"), and informed him that their investigation and the CPS investigation against him were closing. After Wright gave the officers the threatening emails and phone calls, the officers said that they planned to investigate whether Sarah had fabricated the abuse allegations.

38.     On December 1, 2017, Wright's children arrived for visitation but were prevented from seeing him by Visiting Sergeant Bower. Wright explained that his wife was sabotaging his relationship with his kids. Sergeant Bowers stated he was under orders not to let Wright see any minors.

39.     On December 10, 2017, Wright received a letter from defendant Jackson, the Superintendent of Monroe, stating Wright's visitation with minor children was suspended, pending an investigation.

COMPLAINT FOR DAMAGES - 7

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

40.     Wright's divorce attorney, Kathryn Peterson ("Peterson"), contacted CPS to inquire as to why such an investigation was being conducted. Defendant Carmel told Wright's attorney that CPS was closing its investigation with no findings of fact or action taken.

41.     Carmel went behind Wright's back and conspired with the GAL, David Hodges, Sarah, and defendant Hathaway to deprive Wright of his constitutional right to see and parent his children.

42.     In January of 2018, Attorney Peterson spoke with Major Crimes Detective, Barry Hatch, from Monroe Police Department, who said that there was no probable cause to arrest Wright, but the matter was being referred to the Snohomish County Prosecutors office for a final review.

43.     In February of 2018, the prosecutor sent a letter to Peterson stating that no crime was committed and they were closing the case.

44.     Each time Wright received a letter, he would send that letter to defendant Hathaway, asking for restoration of his visitation with his children. Defendant Hathaway indicated he reviewed an evaluation of Wright's daughter conducted by the police, and he found something disturbing. According to the evaluation, Wright's daughter indicated that while he was using the restroom in the trailer, he took out his penis and shook it at her.

45.     Carmel, who was Sarah's caseworker, claimed she was investigating the Wright family. Carmel requested Monroe suspend overnight visits between Wright and his children, and any remaining visitation to be supervised by law enforcement officials. In response, Monroe suspended all visitation with minors.

46.     During the past couple of years, Wright has had over 600 general visits and 40 overnight visits with his children without a single infraction.

COMPLAINT FOR DAMAGES - 8

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

47.     Any and all allegations of sexual misconduct or abuse on behalf of Wright towards his children are false. Wright provided proof to defendant Hathaway and other prison officials through recordings of telephone conversations between himself and Sarah where she threatened to have his kids removed.

48.     To alleviate any concerns around sexual misconduct, Wright has taken a sexual deviancy evaluation at his own expense and a lie detector test.

49.     Since November of 2017, Wright has not been allowed to see his children. Though CPS, Monroe Police Department, and the Prosecutor have not taken action against him, defendants Hathaway and Jackson have refused to allow Wright visitation with his children. The absence of Wright's children for more than seven months, combined with Sarah's harassment over the last two years, has caused Wright extreme emotional distress.

50.     Even after filing grievances, Wright was told this was not a grievable offense so he has sent more than 40 messages to defendants Hathaway and Jackson using the prison kiosk system. Although he has proof of receipt, he has never received a response.

## X.     FIRST CLAIM FOR RELIEF

(42 U.S.C. § 1983—Deliberate Indifference-all defendants except Carmel)

51.     Plaintiff realleges and incorporates paragraphs 1 through 50 with the same force and effect as if such paragraphs were separately realleged in this First Claim for Relief.

52.     At all times material hereto, defendants, jointly and severally, had a duty not to be deliberately indifferent to the mental health needs and the physical safety of its inmates, including plaintiff.

53.     At all times material hereto, plaintiff was an inmate of the DOC and in its custody. He was repeatedly threatened by his ex-wife and other inmates with physical harm, and

COMPLAINT FOR DAMAGES - 9

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

he was threatened with removal of his children on numerous occasions if he did not succumb to their extortion requests for money. Despite being specifically informed of these threats, defendants did nothing to stop them or to protect plaintiff.

54.    As a direct, proximate, and foreseeable result of defendants' deliberate indifference to plaintiff's known parental rights, plaintiff suffered emotional distress and has missed time with his children during their most formative years. Such loss of time cannot be replaced. He also incurred expenses related to phone usage and legal representation.

55.    As a direct and proximate cause of the actions and omissions described in this complaint, plaintiff has been terrorized, blackmailed, forced to reside in fear, and deprived of his ability to see and raise his children which has caused him emotional distress, all to his damage in an amount to be ascertained according to proof at trial.

## XI.    SECOND CLAIM FOR RELIEF

(42 U.S.C. § 1983—Denial of Due Process-violation of liberty interest in raising children-all defendants)

56.    Plaintiff realleges and incorporates paragraphs 1 through 55 with the same force and effect as if such paragraphs were separately realleged in this Second Claim for Relief.

57.    Plaintiff has a procedural due process right, under the Fifth and Fourteenth Amendments to the U.S. Constitution, not to be deprived of his liberty without the due process of law.

58.    The visitation rights of plaintiff were stopped without any due process at all and solely based on the prison staff and CPS desire to punish him based on an alliance with his vindictive ex-wife.

COMPLAINT FOR DAMAGES - 10

**Civil Rights Justice Center PLLC**
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

59.     By suspending and revoking plaintiff's visitation rights, defendants caused him the loss of his ability to parent and interact with his children. Plaintiff was entitled to due process before these rights could be taken away. He has missed time with his children during their most formative years. Such a time cannot be replaced.

60.     As a direct and proximate cause of the actions and omissions described in this complaint, plaintiff has been deprived of his rights in violation of the Fifth and Fourteenth Amendment and has suffered emotional damage, trauma, considerable disturbance in his life, all to his damage in an amount to be ascertained according to proof at trial.

## XII.     THIRD CLAIM FOR RELIEF

(Equal Protection-all defendants)

61.     Plaintiff realleges and incorporates paragraphs 1 through 60 with the same force and effect as if such paragraphs were separately realleged in this Third Claim for Relief.

62.     Defendants' above-mentioned unlawful conduct caused and continues to cause plaintiff harm, because they deprived him of the right to visitation with his children.

63.     Defendants have deprived and continue to deprive plaintiff his right to equal protection of the laws secured by the Fourteenth Amendment to the United States Constitution, by preventing him from seeing his children. No other inmates have been so deprived of their right to visit with their children without a court order and no viable or justifiable explanation had been provided to him for these deprivations.

64.     The restriction imposed on plaintiff is unconstitutional and has substantially burdened him as a parent.

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

65.     Plaintiff is entitled to a declaration that defendants' above-described conduct causes a substantial burden to him as a parent, is not justified by a compelling governmental interest, and is in violation of his Fourteenth Amendment Right to equal protection of the laws.

66.     Plaintiff is entitled to issuance of a preliminary and permanent injunction granting the relief described in the Prayer for Relief below.

67.     Defendants' unlawful actions caused plaintiff harm, and he is entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper, including costs and attorneys' fees in this action.

## XIII.   FOURTH CLAIM FOR RELIEF

(42 U.S.C. § 1983 – Conspiracy to violate Fourteenth Amendment-all defendants except Sinclair)

68.     Plaintiff realleges and incorporates paragraphs 1 through 67 with the same force and effect as if such paragraphs were separately realleged in this Fourth Claim for Relief.

69.     Defendant Hathaway conspired with Carmel and other CPS employees, prison officials, and law enforcement to prevent plaintiff from exercising his parental visitation rights by suspending his visitation, preventing him from spending time with his minor children. The conspiracy was formed out of spite and ill will and to satisfy personal relationships and to cover up others.

70.     As a direct, proximate, and foreseeable result of defendants' conspiracy to prevent plaintiff from exercising his parental rights to visit his children, plaintiff suffered emotional distress and has missed time with his children during their most formative years. Such loss of time cannot be replaced. He also incurred expenses related to phone usage and legal representation.

COMPLAINT FOR DAMAGES - 12

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington 98133
(206) 557-7719 / Fax: (206) 659-0183

71.     As a direct and proximate cause of the actions and omissions described in this complaint, plaintiff has been terrorized, blackmailed, forced to reside in fear, and deprived of his ability to see and raise his children, including regular visits and trailer visits with them, which has caused him emotional distress, all to his damage in an amount to be ascertained according to proof at trial.

## XIV.     PRAYER

WHEREFORE, plaintiff requests that this Honorable Court enter judgment in his favor and against defendants on each and every count in this Complaint, and enter an Order awarding the following relief:

A.     A declaratory judgment that:

    1.     Defendants' parent visitation policies, practices, and customs violate the Fifth, Eighth, and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983;

    2.     Defendants' conduct and policy constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United State Constitution;

    3.     Defendants' denial of plaintiff's parental visitation rights is a substantial burden of plaintiff's parental rights and is not justified by a compelling government interest;

B.     An injunction:

    1.     Requiring defendants Sinclair and Jackson to restore plaintiff's visitation rights with his children, including one overnight per month as ordered by the Snohomish County courts;

COMPLAINT FOR DAMAGES - 13

Civil Rights Justice Center PLLC
2150 N 107th Street, Suite 520
Seattle, Washington  98133
(206) 557-7719 / Fax: (206) 659-0183

2.    Requiring defendants to remedy the constitutional violations identified above, including, but not limited to, eliminating any existing procedure denying plaintiff the right to parental visitation with his children;

C.    For general and special compensatory damages against defendants Jackson, Hathaway and Carmel in the amount of $350,000;

D.    For punitive damages against all individually named defendants, excluding the Washington Department of Corrections and Steven Sinclair, in the amount of $500,000 each;

E.    For an Order requiring the Washington Department of Corrections to replace all of the good time and benefits lost and for immediate release of plaintiff from custody;

F.    For reasonable attorney's fees and costs pursuant to provisions of 42 U.S.C. § 1988 or any other applicable law;

G.    For costs of suit incurred herein; and

H.    For such other and further relief as the Court may deem just.

CIVIL RIGHTS JUSTICE CENTER PLLC

Darry Parker, WSBA #30770
2150 North 107th Street, Suite 520
Seattle, WA 98133
206-557-7719
Email: dparker@civilrightsjusticecenter.com

COMPLAINT FOR DAMAGES - 14